Brian K. Gallik
**GALLIK & BREMER, P.C.**
**777** East Main Street, Suite 203
P.O. Box 70
Bozeman, MT 59771-0070
Tel.: (406) 404-1728
brian@galliklawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA, BUTTE DIVISION

| | | |
|---|---|---|
| LAZY J RANCHES LIMITED PARTNERSHIP, | ) ) ) | Cause No.  CV-23-67-BU-BMM |
| PLAINTIFF, | ) ) ) ) | COMPLAINT TO QUIET TITLE, FOR DECLARATORY, INJUNCTIVE, AND OTHER |
| vs. | ) ) | EQUITABLE RELIFE |
| UNITED STATES OF AMERICA AND UNITED STATES FOREST SERVICE, | ) ) ) ) | |
| DEFENDANTS. | ) ) | |

Plaintiff, Lazy J Ranches Limited Partnership, through counsel, states its

cause of action and alleges as follows:

### NATURE OF ACTION

1.    This is an action for declaratory, injunctive, and other equitable relief

pursuant to relevant provisions of law involving an easement in Gallatin County, Montana.

## PARTIES

2.      Plaintiff Lazy J Ranch Limited Partnership owns certain real property in Gallatin County, Montana, that is accessed via the Stone Creek Road (and incorporates the majority of that Road) that is the subject of this lawsuit.

3.      Defendant United States Forest Service ('USFS") is a federal agency within the U.S. Department of Agriculture that administers certain federal lands owned by the defendant United States that are accessed via Stone Creek Road.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§2409(a), 1331, 1346(f), and/or 2201.

5.      The Court has supplemental jurisdiction over related matters of Montana state law under 28 U.S.C. §1367(a).

6.      The Court has personal jurisdiction over all of the parties.

7.      Venue is proper under 28 U.S.C. §1391 (b)(2) and (e) and District Court Local Rule 3.2 (b) because the property that is the subject of this action is located in Gallatin County, Montana, within the Butte Division.

## FACTS RELEVANT TO ALL COUNTS

8.     Lazy J Ranches, LP (Lazy J), owned by the Brask family, purchased real property from James and Beatrice Taylor located in Bridger Canyon. Included was Section 9 of Township 1S, Range 7E, Gallatin County, Montana, located in the "Stone Creek" drainage. Stone Creek Road No. 480 crosses Sections 9 and 10, owned by Lazy J, starting at Bridger Canyon Road approximately nine miles northeast of Bozeman. It proceeds east to an area where the Forest Service has an easement for parking and then eventually to property owned by others, including the Forest Service. See Exhibit ["Ex."] A, pp. 4 & 5 ("Right of Way Plat").

9.     Prior to Lazy J's acquisition of the property, the Taylors had granted "an easement over" Stone Creek Road, by written grant dated November 27, 1979. Ex A. (Grant of Easement and Right-of-Way Plat). The width of the surveyed "right-of-way" is approximately sixty feet (60'), with the road located within the right-of-way. The government acquired this easement with actual and constructive notice of the easement the Taylors had previously granted to G. Peter Koss and Raymond and Betty Tocci, which expressly provided for the construction and maintenance of a gate at the intersection of Bridger Canyon Road and Stone Creek Road. Ex. B (easement to Koss & Tocci).

10.     Since Lazy J purchased Section 9, it has experienced an increase in problems with members of the public parking and camping off Stone Creek Road,

3

but within the right-of-way. This use of the easement has also resulted in other problems, including but not limited to, trespass, dogs off leash chasing and disturbing cattle, damage to existing fencing and signs, littering and problems loading and unloading cattle, drainage, vegetation disturbed and weed control along with the increased burden to move cattle around parked cars. These problems exist primarily in the summer and are beyond the scope of the easement, unduly burdens the servient estate and constitutes a continuing trespass and nuisance. During the winter, the cars park on the highway (Bridger Canyon Road), because Stone Creek Road is plowed only to a one (1) vehicle width for homeowners who live further up Stone Creek.

11.    Lazy J made its concerns known to the Forest Service soon after its purchase of the subject property. However, by letter dated August 26, 2019, the government addressed only the issue of parking, claiming that upon "reviewing the terms and intent of the easement to the United States, parking is an acceptable and allowable use of the easement area." The letter cites to no language in the easement or any Montana law supporting this conclusion. It boldly claims the easement grants the United States "full jurisdiction" of Stone Creek Road. Moreover, it fails to address the other problems experienced by Mr. Brask and Lazy J Ranches.

12.     As explained below, the Government's position with respect to the scope of the written easement is neither supported by the language of the easement or the law.

A.     **The Easement**.

13.     On November 15, 1977, Lazy J's predecessor in interest, the Taylors, granted an easement to Koss and Tocci over Stone Creek Road. That easement provided in relevant part, in paragraph 5: "Whereas Koss-Tocci are desirous of having a right to use the same easement, with the exception only of modifying the same so that instead of having construction of a cattle guard that there be established a gate at the commencement of the easement, both parties to maintain their own locks on the gate, said gate to be of the type of construction as determined by Taylor . . . ." Ex. B . That easement was recorded with the Gallatin County Clerk and Recorder on July 26, 1979 at Book 51 of Miscellaneous, page 977. *Id.* Accordingly, the government was on constructive and actual notice of its existence, and the terms of that easement.

14.     After that grant of easement, on November 29, 1979, James C. and Beatrice R. Taylor granted to the United States, "*an easement for Stone Creek Road No. 480*, variable in width with such additional width as is necessary to accommodate and protect cuts and fills over and across the following described lands in . . . [Gallatin County]. . ." Section 9 Lots 5, 6, 7, 8 and S1/2SW1/4 of Township

1 South, Range 7 East. Ex. A, ¶ 2. Joining in the grant were G. Peter Koss and Raymond and Betty Tocci who held a "nonexclusive road right-of-way, by virtue of an existing grant of easement over the same road as evidenced by the Agreement dated November 15, 1977, and recorded July 26, 1979, in Book 51 of Miscellaneous, page 977, records of Gallatin County . . . Montana." *Id.*, ¶ 1. Collectively, the Taylors, Koss and Tocci were the "Grantors" of the "easement for Stone Creek Road No. 480" to the United States. *Id.* "The said easement is in conformity with and located upon the ground according to the survey line, figures, measures, width and other references shown on the plat hereto attached and made a part hereof." *Id.*, ¶ 3. *See also*, Ex. B. The centerline of the road, subsequently constructed, is "hereby deemed accepted by the Grantor as the true centerline of the easement granted." *Id.*

15.    The plat accompanying the written grant of easement, depicts the centerline of the right-of-way easement, with approximately 30' on each side of the centerline. *Id.* The plat calls for the installation of two (2) cattleguards, along with culverting in certain locations. *Id.*

a.    **The Grant**

16.    As stated, Taylors and Tocci granted to the United States, "*an easement for Stone Creek Road No. 480, variable in width with such additional width as is necessary to accommodate and protect cuts and fills over and across the following described lands in . . . [Gallatin County]. . .*" Section 9 Lots 5, 6, 7, 8 and S1/2SW1/4

6

of Township 1 South, Range 7 East. Ex. A, ¶ 2 (emphasis added). The same document states: "*TOGETHER WITH such reasonable rights of temporary use of the Grantors' lands immediately adjacent to said right-of-way as may be necessary for the construction, reconstruction, improvement, and maintenance of said road.*" Ex. A, ¶ 4 (capitalization and emphasis added).

17.    The easement was "granted on condition that grantee (Forest Service) shall not construct any fence within the specified right-of-way." Ex. A, ¶ 6.

18.    The grant further states, in particular, that "Grantee alone may extend rights and privileges for use of the road to other Government departments and agencies . . . *and to other users including members of the public.*" Ex. A., ¶ 7 (emphasis added).

19.    The use of a road within an easement does not allow the government to extend any secondary easements associated with the easement, including parking and/or camping. Instead it is a right of passage.

20.    In short, Taylors granted "an easement for Stone Creek Road" and a temporary, secondary easement on Lazy J's property immediately adjacent to the right-of-way "as may be necessary for the construction, reconstruction, improvement, and maintenance of said road." It did not grant secondary easements for parking or camping within the easement, nor did it grant a secondary easement on lands immediately adjacent to the easement for purposes of construction,

reconstruction, and maintenance of any parking area.  The easement is also silent on the issue of gates across the easement.

21.    Instead, the easement allowed the Grantee, the USFS, only to "extend rights and privileges for use of the road to other Government agencies, States and local subdivisions thereof, and to other users, including members of the public." (emphasis added)

b.    **Conditions and Reservations of Grant by Grantor.**

22.    As explained in paragraph 21, the government can only extend the rights and privileges associated with "use of the road" which is different than use of the easement.

23.    Further, the "[e]asement [was] granted on condition that the grantee (United States) shall not construct any fence within the specified right-of-way." *Id.*, ¶ 6.    In addition, the Grantors, their heirs and assigns, reserved "The right to cross and recross the **easement** at any point and for any purpose and in such manner as will not materially interfere with the use of the **road**. *Id.*, ¶ 8.1.    Although unnecessary, as this is not an exclusive easement, the easement further reserved to Taylor, their successors and assigns, "[T]he right to use the road to be constructed or reconstructed to serve the Grantor's property subject, however, to [only] *traffic control regulations* as Grantee may reasonably impose and the bearing of road maintenance costs proportionate to use, in each case as authorized and provided by

the regulations of the Secretary of Agriculture and as they may be amended and published in the CFRs. *Id.*, ¶ 8.3 (emphasis added).[1]

24.    In summary, the Taylors granted <u>the United States</u> an *easement for Stone Creek Road No. 480* . . . *TOGETHER WITH such reasonable rights of temporary use of the Grantors' lands immediately adjacent to said right-of-way as may be necessary <u>for the construction, reconstruction, improvement, and maintenance of said road.</u>"    Parking and camping off the road but within the easement are not within the terms of the grant.

25.    Further, the easement restricted the government's right to extend the rights and privileges to only <u>the road</u>, within the easement to third parties, including the public. "Grantee [United States] alone may extend rights and privileges <u>for use of the road</u> to other Government departments and agencies, States, and local subdivisions thereof , and to other users <u>including members of the public.</u>"    There

---

[1]    Parking areas are expressly <u>not provided</u> for in the applicable regulations governing traffic control on federal roads subject to the Code of Federal Regulations. *See* Title 23, Chapter 1, Subchapter G, Part 665 & § 655.603(a) ("MUTCD [Manual on Uniform Traffic Control Devices] approved by the Federal Highway Administrator is the national standard for all traffic control devises installed on any street, highway, or bicycle trail open to public travel in accordance with 23 U.S.C. § 109(d) and 402(a).  "<u>Parking areas</u>, driving aisles within parking areas . .. <u>are . . . not included in this definition.</u>" (emphasis added).  https://www.ecfr.gov/cgi-bin/text-idx?SID=a2583ef3fa3a41e5b157549f8dd705ab&mc=true&node=pt23.1.655&rgn=div5#se23.1.655_1603

was no grant of easement, primary or secondary, to the public to park or camp within the easement, only the right to use the road.

26.    Further, the government is not allowed to construct any fence within the right-of-way, and the owner of the servient estate [Taylor] reserved the right to cross and recross the easement, at any point and for any purpose, so long as it doesn't interfere with the use of the road.  They also reserved the right to use the road, to serve the servient and other estates owned by them, subject only to reasonable *traffic control regulations* imposed by the United States.  The easement does not grant any rights to the government to use the easement for parking or camping, and the reservation of the right to cross the easement at any point for any purpose is clearly inconsistent with parking or camping off the road and in the easement.  Any parking or camping or camping interferes with Lazy J Ranches' right to cross and recross its property (the servient estate), is an unreasonable burden on its property and rights under the easement.

27.    The parking and camping by the public off Stone Creek Road, but within the balance of the easement, is outside the scope of the easement granted and has interfered, and continues to interfere with Lazy J's  ability to use its property, including crossing and recrossing the easement at any point and for any purpose, including interference with the loading and unloading of cattle.   In addition, members of the public have allowed their dogs off leash chasing and bothering cattle

on Lazy J's property, which includes the land adjacent to the road, but within the easement. The public has also damaged fencing and littered. The government's maintenance of the road also fails to respect Lazy J's existing approaches to its field, as it grades through field approaches, rather than picking up the blade and then returning to the ground after passing the approach. These approaches have gates which are maintained by the Plaintiff.

## COUNT I

## (DECLARATORY & INJUNCTIVE RELIEF)

28. Plaintiff incorporates by reference, paragraphs 1-27.

29. 28 USC § 2201 allows a party to seek a declaration of rights or other legal relations. Any such declaration shall have the forced and effect of a final judgment or decree. The rule governing the procedure for obtaining a declaratory judgment is set forth in Rule 57 of the Federal Rules of Civil Procedure.

30. The easement at issue was created by express grant and accomplished by a writing signed by the creator of the easement. Bruce and Ely, *The Law of Easements and Licenses in Land*, § 3:1 at pp. 1181-119 (citations omitted). The scope (*i.e.* utilization) of an express easement depends on the terms of the grant. Bruce and Ely, § 8:2 at 507. Montana has codified this rule in MCA § 70-17-106: "The extent of a servitude is determined *by the terms of the grant....*" (emphasis

added).  See also, *Bridger v. Lake,* 271 Mont. 186, 191, 896 P.2d 406, 408 (applying

MCA § 70-17-106).

31.    When precise language is used to create an easement, that terminology

governs the extent of the use.  *Mattson v. Montana Power Co.*, 2009 MT 286, 352

Mont. 212, 221, 215 P.3d 675.  However, where the terms of the grant are imprecise

or incomplete, courts consider other circumstances to aid their interpretation of the

written instrument.  Bruce & Ely, § 8:2 at 510; *Guthrie v. Hardy*, 2001 MT 122, 305

Mont. 367, 28 P.3d 467 (observing that when easement is general rather than specific

in nature, "the question of what may be considered reasonably necessary and

convenient in light of the easement's intended purpose is determined with a view to

the situation of the property and the surrounding circumstances.")

32.    Consistent with the usual rules of construction, courts commonly

resolve ambiguity in the grant of an easement against the grantor and in favor of the

grantee.   Bruce and Ely, § 3:5 at 132; § 8:2 at 510-511.  Montana law follows that

standard.   MCA § 70-1-516 states: "A grant is to be interpreted in favor of the

grantee, except that a reservation in any grant and every grant by a public officer or

body, as such, to a private party is to be interpreted in favor of the grantor."    See

also, *Watson v. Dundas*, 2006 MT 104, 332 Mont. 164, 136 P.3d 973 (citing MCA

§ 70-7-516).

33.     According to Bruce and Ely, "[d]espite the professed emphasis on the binding effect of precise language, the parties are deemed to have contemplated the easement holder's right to do whatever is reasonably convenient or necessary in order to enjoy fully the purposes for which the easement was granted." *Id*. at § 8:3 at 518.  See also, *Early v. Pavex Corp.*, 2013 MT 343, 372 Mont. 476, 496, 313 P.3d 154, 168 (citing Bruce and Ely).  What constitutes reasonable usage is a question of fact.  *Guthrie v. Hardy,* 2001 MT 122, 305 Mont. 367, 28 P.3d 467.    "Courts consider the location and uses of both the dominant estate (government property) and the servient estate (Taylor/Brask) as well as the relative advantage or disadvantage to the parties caused by the usage."  Bruce and Ely, § 8:3 at 520.

34.     It is Black letter law, however, that the dominant owner (here the United States) may not unreasonably increase the burden on the servient estate.  Bruce and Ely at 8:12 at 549.  Some types of overburden are "common."  Bruce and Ely, § 8:13 at 552.  For example, "the dominant owner may not park vehicles on a right of way when such parking interferes with activities of the servient owner." *Id*. at 552, citing cases.

35.     In *Sampson v. Brooms*, 230 Mont. 190, 748 P.2d 960 (1988) (overruled on other grounds by *Shammel v. Canyon Resources Corp*, 2003 MT 372, 319 Mont. 132, 83 P.3d 912), the Montana Supreme Court held that the parking and storage of

cars within the easement, as it crossed the servient estate, was an unreasonable burden, and therefore prohibited.  The Court stated:

> We begin with the proposition that "[n]o use may be made of the right of way, different from that established at the time of its creation, so as to burden the servient estate to a greater extent than was contemplated at the time of the grant." *Titeca v. State of Montana (Mont. 1981), 634 P.2d 1156, 1159, 38 St.Rep. 1533, 1537*, (citing *25 Am.Jur.2d Easements and Licenses, Section 77* at 483).
>
> <u>Requiring the servient tenement, the Grooms, to request Sampson to clear the easement upon reasonable advance notice "burdens" the servient estate to a greater extent than was contemplated at the time of the grant.</u>" *Titeca, at 1159.*  Accordingly, parking and storage of vehicles is an unreasonable burden upon the servient estate under the circumstances of this case.
>
> The law requires that Sampson's use of the easement not unreasonably burden the servient tenement. The law also requires that the Grooms "make use of the land in any lawful manner that [they choose], which use is not inconsistent with and does not interfere with the use and right reserved to the dominant tenement or estate." *City of Missoula v. Mix* (1950), 123 Mont. 365, 372, 214 P.2d 212, 216.

230 Mont. at 197 (emphasis added).

36.    Applying the foregoing standards to the Stone Creek Road, the easement simply "grants an easement for Stone Creek Road. . . *TOGETHER WITH such reasonable rights of temporary use of the Grantors' lands immediately adjacent to said right-of-way as may be necessary for the construction, reconstruction, improvement, and maintenance of said road*."  While general in nature, considering the relative locations of the dominant and servient estates, and

the respective uses of those estates, the purpose of the easement was simply to provide a right of way, or access, or ingress and egress across Sections 9 and 10 to government property for a timber sale. Moreover, the plain language of the grant does not allow for parking on the servient estate, let alone overnight camping.

37.    The circumstances surrounding the granting of the "easement over Stone Creek Road" and the relative uses of the servient and dominant estates at the time of the grant further support a conclusion that the purpose of the grant of access was simply to provide for access to landlocked government lands, and not provide for parking and camping. This is confirmed by the later construction of a parking lot on government property (the dominant estate). Further, the use of the servient estate at the time of the grant was agricultural, with cattle grazing on that property. It is for that reason that Taylors granted Tocci the right to construct a gate and cattle guards were later installed in two locations, which allowed for the continued grazing of cattle while allowing passage over the servient estate. The government's conduct constitutes an overburden of the easement and servient estate.

38.    Similarly, the "together with" language of the grant of easement is limited to temporary use of Lazy J's property "immediately adjacent to said right of way . . ." and only for purposes of construction, repair and maintenance of the road. It does not allow for construction, repair or maintenance of parking areas or camping areas adjacent to the road, but within the easement. Had the parties intended to

include parking or camping as permitted uses within the area of the easement between the road and the remainder of Lazy J's property immediately adjacent to the easement they could have done so. However, they did not. Further, vegetation has been and is being destroyed outside of the traveled way due to vehicles parking and turning around, particularly during wet conditions. The government's conduct constitutes an overburden of the easement and servient estate and a trespass.

39.    Regardless, such a construction of the language of the grant of easement is inconsistent with the right reserved by Taylor (and Lazy J) to "cross and recross the easement <u>at any point and for any purpose</u> in such manner as will not materially interfere with <u>the use of the road</u>." If there are cars parked off the road, but in the easement, those cars, no matter the duration of their stay, or location, interfere with Brask's right to cross and recross "the easement" "<u>at any point and for any purpose</u>" or graze vegetation that is located within the easement and outside the traveled road.

40.    Thus, parking and camping next to the road interferes with Lazy J's right to cross and recross the easement, between the road and the edge of the easement, at any point and for any purpose. Moreover, under the rationale of the *Grooms* case, above, requiring Brask to call the government to either have cars removed or post no parking signs in certain areas in anticipation of crossing the easement, <u>"burdens" the servient estate to a greater extent than was contemplated at the time of the grant</u>."

41.    The same analysis applies with equal, and greater force, to overnight camping and littering in the easement area, as well as dogs off leash (trespass) and littering.

42.    In sum, the parking of cars off the road in the easement for any period of time is not authorized by the plain language of the grant of easement.  Such a construction constitutes an undue burden on the servient estate (owned by Lazy J) and is contrary to the express rights reserved by Lazy J to cross and recross the easement at any point for any purpose.  If there is a car, or cars parked anywhere in the easement as it crosses Lazy J's property, Lazy J is unable to cross the easement at that point and, while there have already been conflicts between Lazy J's use of the easement area in conjunction with its ranching operations, Lazy J's reasons for crossing at any location are immaterial.  Under prior Montana law, to force the Brasks to call ahead to either have cars moved or have signs posted forbidding parking in a certain location burdens their estate to a greater extent than was contemplated at the time of the grant or allowed  under the plain language of the easement, which was clearly simply a right of passage, together with the right to repair and maintain the road (not a parking or camping area).

43.    Finally, with respect to the existence of a gate off the entrance to Bridger Canyon Road, onto Stone Creek Road, the government took its easement subject to the prior recorded right to install and maintain a gate over and across the

easement.  As it was on actual and constructive notice of that right to place a gate on the easement, the government is not a good faith purchaser for value (BFP) and thus took title subject to that restriction.   Plaintiff has the right to install a gate at this location.

**COUNT II**

**OVERBURDEN OF SERVIENT ESTATE**

**(TRESPASS & INJUNCTIVE RELIEF)**

44.    Plaintiff incorporates by reference paragraph 1-43.

45.    The dominant owner (United States) may not unreasonably increase the burden on the servient estate (Plaintiff).

46.    The easement specifically limits the easement holder's use to travel over the road within the easement.

47.    The secondary easement does not extend to parking or camping off the road and within the easement.  Instead, it is limited to "use of the road" within the easement.

48.    An easement holder becomes a trespasser to the extent that the holder's use of the servient estate exceeds the scope of the easement.

49.    The actions of the government, allowing the use of the easement, outside the road and in the easement for parking and camping, constitutes a trespass, and because of the government's failure to enforce the terms of the

easement, the actions of the public and government constitute a trespass and continuing trespass.

50.    The Plaintiff is entitled to equitable relief, including an injunction, to restrict the government to proper enjoyment of the servient servitude.

51.    Plaintiff is also entitled to damages for overburden of its servient estate.

52.    In the alternative, the overburden authorizes the court to extinguish the easement.

**WHEREFORE,** Plaintiff respectfully prays that this Court grant it the following relief and enter the appropriate judgment in its favor as follows:

A.    Because a dispute exists concerning the scope of the subject easement, declare the scope of the easement consistent with the foregoing and declare that all uses inconsistent with that declaration are an overburden on the servient estate and constitute a trespass;

B.    Permanently enjoin unauthorized uses of the easement, that are inconsistent with the foregoing, because those uses are inconsistent with the declared scope of the easement, an overburden on the servient estate and constitute a trespass;

C.    Find, as a matter of law, that uses of the easement outside the declared scope of easement constitutes a trespass and permanently enjoin those actions;

D.    Post and maintain signs making clear to the traveling public that the

access is restricted to that of <u>passage</u> over Sections 9 and 10, which are private properties, and that parking and overnight camping is prohibited within the easement as it crosses the servient estates, as beyond the scope of the easement and such uses are an unreasonable burden on the servient estate and constitute a trespass;

E.    Post and maintain signs that: (1) dogs off leash and (2) trespassing on adjacent private lands is prohibited;

F.    Monitor and strictly enforce the prohibition on parking, camping, littering and no dogs off leash within the easement as it crosses Sections 9 and 10, including ticketing and towing of cars, and citing of individuals for trespass (including dogs off leash) and littering as such uses constitute an unreasonable burden on the servient estate and are a trespass;

G.    Order the government's maintenance of the Road and easement shall respect and not harm or burden the existing field approaches from the Road and easement onto Lazy J's property;

H.    Order the government to repair the existing culverts and field approaches immediately;

I.    Order the government to inspect on a weekly basis the easement across Sections 9 and 10 and remove all trash left by the public;

J.    Order the government to remove turnouts on Stone Creek Road that the grader, unilaterally and without permission, has built for parking;

K.      Order the government to install and maintain a gate pursuant to the prior recorded Tocci Easement, which the government took subject to.

L       Declare the actions of the public, as allowed by the government, outside of the road, but within the easement are beyond the scope of the easement and a trespass, which trespass continues to this day;

M.      Damages, as allowed by law; and/or

N.      Extinguishment of the easement;

O.      For attorneys fees and costs as allowed by law; and

P.      For such other and further legal and equitable relief as the Court deems just, equitable and necessary.

DATED this 4th day of October, 2023.

GALLIK & BREMER,  P.C.

/s/ Brian K. Gallik

Brian K. Gallik